FILED
OCT 2 0 2009

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAWDAT K. MOHAMMAD,

                Petitioner,

    v.

ERIC HOLDER, JR., Attorney General of the
United States; ROBERTS S. MUELLER III,
Director, Federal Bureau of Investigation;
MICHAEL A. CANNON, Chief, National
Namecheck Section of the Federal Bureau of
Investigation; JANET NAPOLITANO, Secretary
of Homeland Security; MICHAEL AYTES, Acting
Director, United States Citizenship and
Immigration Services (USCIS); F. GERARD
HEINAUER, Director, USCIS Nebraska Service
Center; and WILLIAM D. McNAMEE, Director,
USCIS Portland,

                Respondents.

Civ. No. 08-617-AC

FINDINGS AND
RECOMMENDATION

*Introduction*

    Petitioner Jawdat K. Mohammad ("Mohammad") seeks relief from this court in the form of

a declaratory judgment and injunction compelling the federal government to adjudicate his

FINDINGS AND RECOMMENDATION      1                                {KPR}

immigration status adjustment application, as well as damages for violations of the Administrative Procedures Act ("APA") and Mohammad's due process rights.   Mohammad's suit names as respondents Michael Mukasey, Attorney General of the United States; Robert S. Meuller III, Director of the Federal Bureau of Investigation ("FBI"); Michael A. Cannon, Chief of the National Namecheck section of the FBI; Michael Chertoff, Secretary of the Department of Homeland Security; Jonathan Scharfen, Acting Director of the United States Citizenship and Immigration Services ("USCIS"); F. Gerard Heinauer, Director of the USCIS Northern Service Center; and William D. McNamee, Director of USCIS Portland (hereinafter collectively referred to as "the Government").[1]   The Government moves to dismiss, alleging that this court lacks subject matter jurisdiction under the doctrine of mootness.   Mohammad opposes the motion, claiming that the action is not moot under the doctrine of voluntary cessation.

The Government's motion should be granted because Mohammad's adjustment application has been approved.   Mohammad has obtained the specific relief he sought through this lawsuit, and the additional remedies he seeks are either for issues now moot or for actions that have not occurred. Accordingly, the Government's summary judgment motion should be granted and Mohammad's claims should be dismissed.

/ / / / /

---

[1] In captioning their motion to dismiss or for summary judgment, the Government noted: "Mark R. Filip, Janet A. Napolitano, and Michael Aytes, replace the previously named Respondents by designation or appointment within their respective departments."  (Respondents' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment at 2.)  However, the court has not recognized these changes nor are they reflected on the official court docket sheet. If the Government wishes to make official changes to the docket sheet and caption, they should request leave of the court by an appropriate motion.

FINDINGS AND RECOMMENDATION        2                    {KPR}

*Factual Background*

Mohammad is a citizen of Iraq. (Administrative Record ("AR") 8-9.)[2] He was admitted to the United States as a refugee on September 23, 1999. (Government ("Govt.") Concise Statement of Material Facts ("CSMF") ¶ 1.) He was admitted in New York "as a refugee pursuant to Section 207 of the INA for an indefinite period of time . . . Employment authorized." (AR 7 (original in all caps).) Prior to entering the United States, Mohammad was affiliated with the Iraqi National Congress ("INC"). (Martin Declaration ("Decl.") ¶ 7.) On a form titled "Registration for Classification as Refugee," Mohammad reported that he had, at some point subsequent to his sixteenth birthday, been a member of the INC. (AR 15.) Mohammad's "Refugee Application Worksheet" identifies the INC as Mohammad's political group. (AR 30.) *See also* AR 31 ("[Mohammad] started working with INC . . . He was the director of military division and for a short time the director of financial division.").

On December 20, 2001, USCIS received Mohammad's application "for adjustment of status to that of a lawful permanent resident[.]" (Martin Decl. ¶ 4.) This application is known as Form I-485. (Martin Decl. ¶ 4.) Mohammad's application cited his status as a refugee as the "basis for eligibility" for "adjustment to permanent resident status." (AR 2.) In acknowledging receipt of this application, USCIS wrote: "It usually takes 360 to 390 days from the date of this receipt to process this type of case." (Mohammad CSMF ¶ 4.)

USCIS "submitted a request for a name check of [Mohammad] to the [FBI] on December 22,

---

[2] The Government submitted the Administrative Record associated with Mohammad's adjustment of status application, under seal. Evelyn Martin certified the record documents as "originals, or copies thereof, from the records of U.S. Citizenship and Immigration Service, Department of Homeland Security[.]" (AR 1.)

2003." (Govt. CSMF ¶ 3.) This request was processed on July 5, 2007, and subsequently transmitted to USCIS on July 17, 2007. (Mohammad CSMF ¶ 24.) On March 26, 2008, the USCIS directed adjudicators to "hold the adjudication of cases that could benefit from the Secretary's expanded discretionary authority under the Consolidated Appropriations Act of 2008," including those cases where the applicant is excluded for affiliation with a terrorist organization, "as defined by 8 U.S.C. § 1182(a)(3)(B)(vi)(III) (Tier III)." (Govt. CSMF ¶ 5.) Mohammad filed this action on May 20, 2008. (Dkt. No. 2.)

"On January 5, 2009, USCIS conducted an adjustment interview with [Mohammad] pursuant to his adjustment of status application[,]" and forwarded information about Mohammad to USCIS headquarters for an exemption determination." (Gov. CSMF 8-9.) The parties filed simultaneous dispositive motions on January 30, 2009, and oral argument was scheduled for May 1, 2009. (Docket ("Dkt.") Nos. 36, 40, 44, 61.) On April 29, 2009, notice of the approval of Mohammad's adjustment application issued. (Defendants' Motion to Dismiss as Moot, Ex. A.) Accordingly, the parties informed the court of this development, and the court established a briefing schedule to determine whether any justiciable issues existed following the grant of Mohammad's adjustment of status request. (Dkt. No. 62.)[3]

//

---

[3] Following the approval of Mohammad's adjustment application, the parties reported to the court that they had reached resolution on many of the issues that were the subject of their then-pending cross-motions for summary judgment. The court directed the parties to brief the remaining issues pertaining to Mohammad's declaratory judgment claim, including but not limited to mootness. The Government's current motion (Dkt. No. 66) and the parties' related briefing (Dkt. Nos. 63, 67, 68, and 69) present the issues remaining for the court to determine following approval of Mohammad's adjustment application. Accordingly, the court finds the current motion to replace and supersede the parties' prior motions (Dkt. Nos. 36, 40, and 44), which are deemed moot.

*Legal Standard*

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the subject matter jurisdiction of the court." *Ahmed v. Scharfen*, No. C 08-1680 MHP, 2009 WL 55939, at *3 (N.D. Cal. Jan. 7, 2009) (citing *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa County*, 343 F.3d 1036, 1039-40 (9th Cir. 2003)). This challenge to jurisdiction may be either facial or factual, depending on whether the motion relies only on the allegations in the complaint or if it relies on evidence extrinsic to the complaint as well. *See Savage*, 343 F.3d at 1039 ("In evaluating the rule 12(b)(1) motion to dismiss, the district court considered affidavits furnished by both parties. This is proper because Rule 12(b)(1) attacks on jurisdiction can be either facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint." (citation omitted)). Where the challenge is factual, the court "need not" presume true the allegations contained in the complaint. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). The party asserting jurisdiction bears the burden of establishing that it exists in a given case. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (citing *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 182-183 (1936)).

*Discussion*

The Government asserts a factual challenge to the court's subject matter jurisdiction. Such a challenge goes beyond the allegations in the complaint and "attack[s] the existence of subject matter jurisdiction in fact." *Thornhill Publishing Co. v. General Tel. & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (citing *Land v. Dollar*, 330 U.S. 731, 735 (1947) (parallel citation omitted)). In particular, the Government argues that having had the requested administrative action taken by the USCIS, Mohammad may no longer claim a justiciable controversy and, thus, his action is moot.

Mohammad argues, primarily, that the voluntary cessation exception to the mootness doctrine applies because Mohammad is still vulnerable to further governmental delays in the naturalization process and, further, the complaint seeks both injunctive and declaratory relief, neither of which were resolved by the approval of Mohammad's adjustment of status application.

A case becomes moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Norman-Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F.3d 1260, 1274 (9th Cir. 1998) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). In particular, "[w]hen a plaintiff seeks declaratory relief . . . the 'test for mootness . . . is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Center for Biological Diversity v. Lohn*, 511 F.3d 960, 963 (9th Cir. 2007) (quoting *Biodiversity Legal Foundation v. Badgley*, 309 F.3d 1166, 1174-75 (9th Cir. 2002) (internal quotation marks omitted)). The party seeking to establish mootness bears a heavy burden. *Norman-Bloodsaw*, 135 F.3d at 1274.

The Government argues that, based on the allegations in Mohammad's complaint, there is no further ground for relief. First, Mohammad requested that the court compel adjudication of his application for adjustment of status pursuant to the APA. The scope of judicial review under the APA includes "compel[ling] agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), but a suit to compel action "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. Southern Utah Wilderness Alliance ("SUWA")*, 542 U.S. 55, 64 (2004) (emphasis in original). Despite the arguably discretionary nature of the delay, Mohammad argued that the delay had been so unreasonable as to

rise to the level of a refusal to adjudicate his application and, thus, the court had jurisdiction to compel the USCIS to act. However, on April 29, 2009, Mohammad's application was adjudicated and approved based on an individual exemption. This, the Government contends, represents all relief Mohammad sought related to the allegedly unreasonable delay.

The court agrees that Mohammad's claims of unreasonable delay in adjudicating his application have been mooted by approval of Mohammed's adjustment application and his receipt of permanent resident status. Mohammad's complaint makes clear that he has obtained the relief he sought through this lawsuit. The great bulk of the complaint describes the events that led to Mohammad's filing an application for permanent residency and purports to chronicle the various systemic and systematic sources of delay that had combined to prevent approval of his application. (Complaint ("Compl.") 3-10.) His claims for relief, which appear on the final two pages of his complaint, focus almost exclusively on the consequences to his application of the on-going delay in processing his application, (Compl. 10-12), primary of which is that he "has been denied his right to apply to become a lawful permanent resident of the United States." (Compl. 11.) With the approval of his adjustment application, he has obtained the relief he sought, lawful permanent resident status.

Mohammad claims that his case is not moot because he seeks declaratory judgment that the delay in adjudicating his application was unreasonable, and he suggests that such a finding would assist him because "[w]ithout a formal ruling that respondents have delayed ruling on his adjustment, petitioner remains vulnerable to another equally long length of time in processing his naturalization application." (Plaintiff's Supplemental Brief 4.) The Government responds that, in light of the adjudication of his application, there is simply no jurisdictional basis for such declaratory relief.

Furthermore, it argues, there is no reason to believe that Mohammad will ever again be subjected to delayed processing of his adjustment of status application because such application has been approved; he now has permanent resident status. Accordingly, there is no injury that can be remedied by the requested declaratory judgment. Mohammad replies that such declaratory relief is permitted under the "voluntary cessation" exception to the mootness doctrine, which provides that "[m]ere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave the defendant . . . free to return to his old ways." *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968) (internal quotation marks omitted). In other words, "actions are properly dismissed as moot if it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Jabbary v. Mukasey*, No. 08-50-JE, 2008 WL 2477561, at *3 (D. Or. June 13, 2008) (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 189 (2000)).

Mohammad's arguments on this point are unavailing. First, his position relies on the speculative contention that the Government could potentially rescind its grant of permanent resident status to Mohammad, a proposition without support in the record here. Mohammad's situation is materially different from that of the plaintiff in *Abou-Elmajd v. Gonzales*, No. 06-1154-KI, 2006 WL 2994840 (Oct. 19, 2006). There, the government approved the plaintiff's adjustment application, then reversed course and denied it based on an undisclosed "memo". *Id.* at *1. Judge King concluded that the government, based on its inconsistent treatment of the plaintiff's application, coupled with its failure to agree that it would cease to rely on the "secret 'memo'" in the future, did not meet its "heavy burden" of demonstrating that "it is 'absolutely clear' it will comply with its own regulations and the United State Constitution in the future." *Id.* at *2 (quoting *Friends of the Earth,*

*Inc. v. Laidlaw Environmental Services., Inc.*, 528 U.S. 167, 189 (2000)).  In contrast, here the Government granted Mohammad's adjustment application, has not rescinded it or threatened to rescind it, and has made no reference to any extrinsic factor, such as a "secret memo," that might cause it to reconsider its grant of his application.

Second, Mohammad's contention that the Government might choose to delay processing of his application for citizenship suffers from a similar absence of support in the record.  A delay in processing Mohammad's adjustment application does not require a finding that the Government will or is likely to delay processing of his citizenship application.[4]  This is especially so on this record, which contains the Government's uncontroverted evidence of the factors considered and investigated relevant to Mohammad's application: that the FBI followed its name-check procedures for Mohammad's application, that his application was placed on adjudicatory hold because of his affiliation with the Iraqi National Congress, and that time was required to assess the applicability to Mohammad of an exemption added to the Immigration and Nationality Act.  And, as the Government correctly points out, the citizenship process is governed by a different statute and different criteria than the adjustment of status process.  In sum, nothing in the record suggests that the Government will delay processing of Mohammad's citizenship application.

Third, Mohammad has abandoned this argument.  Originally, he had asked the court to "bar [the Government] from instituting any proceedings under 8 USC § 1256 seeking [to] rescind approval of [Mohammad's] adjustment of status, unless such rescission is based on newly obtained information not in respondent's possession at the time of adjustment."  (Compl. 12.)  The Government responded that this relief is beyond the scope of the complaint because Mohammad fails

---

[4] Mohammad filed his citizenship application ninety days ago, on June 9, 2009.

to allege any bad faith on the Government's part with regard to his application, and without any reason to believe that the Government currently possesses information that it would use to subsequently rescind Mohammad's application, there simply is no basis for such relief. Mohammad, in his response brief, states "[p]etitioner agrees with respondents that they are unlikely to rescind the grant of the application for adjustment, and does not advance the possibility of such a rescission in support of the petitioner's voluntary cessation argument." (Plaintiff's Response Brief 3 n.2.) Therefore, because Mohammad acknowledges the absence of any basis for this part of the relief he seeks, his position on this issue should be rejected.

*Conclusion*

For the reasons stated, the Government's motion to dismiss (#66) should be granted.

*Scheduling Order*

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due November 2, 2009. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this19th day of October, 2009.

JOHN V. ACOSTA
United States Magistrate Judge